## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

FRANKLIN A. EDWARDS                                          PLAINTIFF

VS.                              4:11CV00528 JTR

ARKANSAS STATE HIGHWAY AND
TRANSPORTATION DEPARTMENT                          DEFENDANT

## MEMORANDUM ORDER

### I.  Introduction

Plaintiff, Franklin A. Edwards, is a former patrol officer with the Arkansas Highway Police ("AHP").  As a member of the AHP, he was considered to be an employee of the Arkansas State Highway and Transportation Department ("ASHTD").[1]

In his Complaint (docket entry #1), Plaintiff alleges that Defendant, ASHTD, refused his request for a job transfer in retaliation for him: (1) complaining about an allegedly "racially divisive" comment made by another officer; and (2) filing a prior lawsuit in federal court about that incident.  This retaliation claim is the only cause

---

[1]The AHP is a "division" of the ASHTD.  *See* Ark. Code Ann. § 27-50-202 (Repl. 2010).

of action Plaintiff has asserted in this case.[2]

Defendant has filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3]   (Docket entry #12).   Before addressing the merits of that Motion, it is important to understand how the retaliation claim in this case is intertwined with the claims Plaintiff asserted in *Edwards I*, his earlier Title VII lawsuit.

In January of 2008, Plaintiff was hired as a patrol officer with the AHP. Dft's Stmt. of Facts at ¶1.   He was assigned to the Crittenden County Area Weigh Station in "District Five," and told that he must establish a residence in that area. Dft's Stmt. of Facts at ¶1.

In June of 2008, Plaintiff requested a hardship transfer to the Newport area, which is part of "District Two." Dft's Stmt. of Facts at ¶2.   He is from Newport, and wanted to be near his terminally-ill mother.   Dft's Stmt. of Facts at ¶2.   The request

---

[2]Plaintiff, who is white, filed an earlier Title VII case against the ASHTD, alleging that African-American supervisors subjected him to a hostile work environment because of his race and retaliated against him for complaining about allegedly "racially divisive remarks" in the workplace.   *Edwards v. Arkansas Highway and Transportation Department*; E.D. Ark. No.   4:10CV00243 DPM ("*Edwards I*").   On April 22, 2011, United States District Judge D. P. Marshall Jr. entered an Order granting summary judgment in favor of Defendant.   Where pertinent, the Court will cite the earlier case as *Edwards I*.

[3]On December 15, 2011, both parties consented in writing to proceeding before a United States Magistrate Judge.   (Docket entry #8 at p.1-2).

was denied.  Dft's Stmt. of Facts at ¶2.

On October 20, 2008, Plaintiff renewed his request for a hardship transfer. Dft's Stmt. of Facts at ¶3.  This request was approved and he was temporarily assigned to a patrol unit in Newport.  Dft's Stmt. of Facts at ¶3.  He was advised that, at the conclusion of his hardship transfer, he would be reassigned to his former position in District Five.  Dft's Stmt. of Facts at ¶3.

On April 3, 2009, Plaintiff was notified that, effective May 7, 2009, his temporary hardship transfer would end and he would be reassigned to the Weigh Station in Crittenden County, where he would again be under the supervision of Captain Jeff Holmes.  Dft's Stmt. of Facts at ¶4.

Some time between May and August of 2009, Plaintiff was among a group of officers discussing an AHP position available in northwest Arkansas.  Dft's Stmt. of Facts at ¶5.  According to Plaintiff, George Blair, a black AHP officer, stated: "I don't want to move up north, there are too many white people up there.  I want to stay down here in Crittenden around my own kind."  Dft's Stmt. of Facts at ¶5.

In October of 2009, Plaintiff requested a shift change because he and Officer Blair were now working the same shift.  *For the first time*, Plaintiff asserted that Officer Blair's earlier comment about not wanting to work in northwest Arkansas was

a "racial comment."[4]  Dft's Stmt. of Facts at ¶6, docket entry#1 at 5.  Plaintiff was

transferred to another weigh station while his complaint was investigated.  Dft's Stmt.

of Facts at ¶7.  AHP investigators concluded that Plaintiff's allegation could not be

substantiated.  Dft's Stmt. of Facts at ¶8.

Plaintiff was upset because the AHP investigators revealed his identity, as the

complaining party, to Officer Blair.  Dft's Stmt. of Facts at ¶9.  Plaintiff claimed to

be aware of another case where a white AHP officer had been accused of making

racial remarks.   According to Plaintiff, the white AHP officer asked the AHP

investigators for the name of the complaining party, but they refused to provide the

name.  Dft's Stmt. of Facts at ¶10.

On November 10, 2009, Plaintiff filed a grievance about the way the

investigation of his complaint was conducted and how his identity was revealed to

Officer Blair.  Dft's Stmt. of Facts at ¶11. He also requested that he be transferred

from District Five to one of the positions available in District Two, near Newport.[5]

---

[4]On October 16, 2009, Plaintiff filed a written complaint about Officer Blair's comment and requested a shift change.  The complaint was addressed to Sgt. Griffin. *Edwards I,* docket entry #11-3 at p.4.

[5]*Edwards I*, docket entry #11-6 at p.1.  The thrust of Plaintiff's grievance was that his supervisors who investigated his complaint were black, had a close relationship with Officer Blair, and treated Plaintiff unfairly in their investigation. *Edwards I*, docket entry #11-6 at p. 4-5.

On November 16, 2009, his grievance was denied and he initiated an administrative appeal.[6]

On December 2, 2009, AHP Sgt. Darren Smith wrote a memo to AHP Captain Holmes stating that he had verbally reprimanded Plaintiff for possessing his loaded "secondary weapon" during a PPCT ("pressure point control tactics") training class that day.[7]

On January 28, 2010, the AHP Grievance Review Panel issued its decision denying Plaintiff's administrative appeal of his November 10, 2009 grievance.[8]  It determined that appropriate action had been taken in the investigation of Plaintiff's complaint about Officer Blair.  Dft's Stmt. of Facts at ¶13.  It also noted that Plaintiff's supervisors had offered him the "opportunity to change to a different shift, to change to a different weigh station in the same District but under a new group of supervisors, or to change to a different weigh station in an entirely different District."[9]

---

[6]*Edwards I*, docket entry #11-4 at p.1-2.

[7]*Edwards I*, docket entry #11-9 at p.1-2.

[8]*Edwards I*, docket entry #11-10 at p.1-2.

[9]*Edwards I*, docket entry #11-10 at p.1.  The transfer opportunities offered to Plaintiff were for vacancies that had already been advertised, and thus "would not deny another qualified AHP officer the opportunity to be considered for a lateral transfer."  *Id.*  There were no advertised vacancies in District Two where Plaintiff wanted to be transferred: "to grant your request to be transfer and place you in a vacant patrol unit (which has not been advertised) would be unfair to other qualified

Plaintiff declined all of those options.

On March 11, 2010, Plaintiff filed an EEOC Charge of Discrimination against Defendant.[10]   Dft's Stmt. of Facts at ¶14.   On March 15, 2010, the EEOC issued Plaintiff a right-to-sue letter.[11]

On April 15, 2010, Plaintiff filed his Complaint in *Edwards I*.[12]   He alleged that:

> (1) After he complained about the "racially hostile statement" made by Officer Blair, he was subjected to a hostile work environment "where supervisors who are African American treat him differently than they treat other African Americans and whites who have not complained in that they look for reasons to discipline the Plaintiff when there is no basis therefore; said actions being taken in retaliation for the Plaintiff filing a complaint of discrimination with the employer pursuant to the

---

AHP officers who might also wish to be considered for a transfer to a unit." *Id.* at p.2.

[10]In his March 11, 2010 Charge of Discrimination, Plaintiff claimed that he was the victim of discrimination based on race.   He also asserted that he was the victim of retaliation. *Edwards I* at docket entry #1 p.5.   He alleged that "since October 21, I have been and continue to be subjected to harassment; denied a transfer to a location I requested; and subjected to retaliation because I complained about a Black co-worker who made a racially-divisive comment.   I was told that I could not transfer to the location of my choosing because there was not a vacancy posting at that location, which would 'deny another AHP officer the opportunity to be considered for a lateral transfer.'   I believe I have been and continue to be harassed and denied a transfer because of my race (White) and retaliation for opposing unlawful employment practices in violation of Title VII." *Id.*

[11]*Edwards I*, docket entry #1 at p.6.

[12]*Edwards I*, docket entry #1.

employer's policy."[13]

(2) He "had requested a transfer from the hostile work environment since the harasser is not being transferred.  The Defendant has only offered transfers that would have been punitive for the Plaintiff, since the only place he could transfer was Alma or Hope, Arkansas, knowing full well that would move him further away from his family."[14]

At some point in the summer or fall of 2010, Plaintiff applied for an advertised

vacancy or vacancies that had become available for a patrol unit in District Two.  The

record is unclear as to the exact number of District Two vacancies that were open,

and how many Plaintiff applied for.[15]   All of those positions were filled by other

---

[13]*Edwards I*, docket entry #1 at ¶11.

[14]*Edwards I*, docket entry #1 at ¶14.

[15]In his deposition in *Edwards I*, Plaintiff testified that "District Two" was comprised of Jackson, White, Independence, and Faulkner Counties.  *Edwards I*, docket entry #15-1 at 33).  Newport is in Jackson County.  He testified that, in August or September of 2010, he applied for one advertised vacancy in District Two and did not get the job.  *Edwards I*, docket entry #15-1 at 34).

In his Complaint in this case, he alleges that, in July of 2010, he "applied for a transfer to District Two" and that there were "four openings in District Two" at the time he applied.  (Docket entry #1 at ¶¶8-9).

According to the Affidavit of Captain Ronnie Anderson, the District Commander of District Two, Plaintiff applied for three of seven District Two vacancies that came open some time in 2010.  (Docket entry #13-2).  He stated that he did not select Plaintiff for the three vacancies because he received information that Plaintiff: (1) had reported late on several occasions resulting in a written reprimand; (2) had exercised poor judgment in writing a speeding citation while on duty at a AHP station; and (3) did not appear to get along well with other officers and required close supervision.  (Docket entry #13-2).

applicants.

On February 22, 2011, Defendant filed a Motion for Summary Judgment in *Edwards I*.

In his Response to Defendant's Motion for Summary Judgment, Plaintiff brought up Sgt. Smith's December 2, 2009 "verbal reprimand" memo, which was based on Plaintiff possessing his loaded "secondary weapon" during a PPCT ("pressure point control tactics") training class.[16]  Plaintiff disputed the events described in Sgt. Smith's memo.  Plaintiff also claimed that the memo was placed in his personnel file and that Captain Holmes "disclosed the [memo's] contents and the allegations in it to Captain Anderson where there was a discussion of whether [Plaintiff] would be granted a transfer to a car in his home town of Newport or to a patrol car in White County making him closer to his family in Newport."[17]

In its Reply Brief in *Edwards I*, Defendant addressed this contention as follows:

> Plaintiff . . . alleg[es] there remains an issue on whether Plaintiff was retaliated against by being denied a transfer to a car and by having a disciplinary letter placed in his file in retaliation for complaining about a racially hostile environment. There are several problems with this statement. First, the issue of Plaintiff being denied a transfer to a car is

---

[16]*Edwards I*, docket entry #11-9 at p.1-2.

[17]*Edwards I*, docket entry #16 at p.2-3.

not before this Court because it was not part of the charge Plaintiff filed with the EEOC. Plaintiff did file a second charge on August 26, 2010, but was never issued a "Right To Sue" letter. Plaintiff filed his original EEOC charge on March 11, 2010 and filed his complaint herein April 15, 2010, before Plaintiff was ever denied a transfer to a car. Though federal regulations allow an amended EEOC charge to relate back (29 C.F.R. § 1601.12), that is not the situation at bar. The second charge Plaintiff filed is not an amendment but is a new EEOC charge altogether with totally separate charge numbers. Further, Plaintiff never amended his Complaint to include the allegation of him not being transferred to a car and therefore this issue is not properly before this Court.

*Edwards I*, docket entry #18 at p.1-2.

On April 1, 2011, United States District Judge D.P. Marshall Jr. entered an Order directing Plaintiff "to supplement the record by filing a copy of the August 2010 EEOC charge no later than 8 April 2011. Edwards should also indicate whether he has received a right-to-sue letter on that charge." *Edwards I*, docket entry #19.

On April 8, 2011, Plaintiff filed his August 26, 2010 EEOC Charge of Discrimination and his April 8, 2011 right-to-sue letter. *Edwards I*, docket entry #20. In his August 26, 2010 Charge of Discrimination, Plaintiff alleged that:

I was hired on or about January 3, 2008 and am currently employed as a Patrol First Class Officer. In March 2010 I filed an EEOC charge and on April 15, 2010 I filed a federal lawsuit against my employer alleging discrimination and retaliation. In July 2010 I applied for a transfer to another District, District 2. On or about July 20, 2010 I learned that I was not selected for any of the openings in District 2. I was informed that another qualified candidate was selected for the positions. I believe that I was denied a transfer in retaliation for filing a previous EEOC charge and federal lawsuit, in violation of Title VII.

9

*Edwards I*, docket entry #20-1.

On April 22, 2011, Judge Marshall entered an Order granting summary judgment in favor of Defendant. *Edwards I*, docket entry #22. As to Plaintiff's hostile work environment claim, Judge Marshall found that his allegations "simply fall short — in quality and quantity — of the abuse required to create a fact issue about racial hostility in the workplace." *Edwards I*, docket entry #22 at 4.

Judge Marshall also took up three retaliation claims asserted by Plaintiff. First, Plaintiff claimed that Defendant retaliated against him by refusing to transfer him to a patrol unit in Newport after he filed his November 10, 2009 grievance about the investigation of his complaint regarding Officer Blair. Judge Marshall noted that Defendant's failure to transfer Plaintiff could not form the basis of his retaliation claim because "failing to transfer an employee does not constitute an adverse employment action." *Edwards I*, docket entry #22 at 4 (*citing LePique v. Howe*, 217 F.3d 1012, 1013-14 (8th Cir. 2000)).

Second, Plaintiff claimed that a sergeant retaliated against him by starting an investigation into whether he was violating the AHP domicile policy. Judge Marshall rejected this argument because "[i]nternal investigations 'are not adverse employment actions when they do not result in any change in form or condition to the employee's employment." *Edwards I*, docket entry #22 at 5 (*quoting Altonen v. City of*

10

*Minneapolis*, 487 F.3d 554, 560 (8th Cir. 2007)).

Finally, Judge Marshall addressed Plaintiff's claim that Defendant retaliated against him by verbally reprimanding him for carrying a firearm during the PPCT training class:

> The reprimand was for wearing a weapon during part of the class when weapons were prohibited. The sergeant also wrote a memo about the incident, a memo Edwards says is now in his personnel file. Edwards "must show that (1) [he] was engaged in a protected activity (opposition or participation); (2) [he] suffered an adverse employment action; and (3) the adverse action occurred because [he] was engaged in the protected activity." *Hunt v. Nebraska Public Power District*, 282 F.3d 1021, 1028 (8th Cir. 2002); *see also* 42 U.S.C.A. § 2000e-3(a) (West 2003). Here Edwards has not established a prima facie case on retaliation.
>
> "A reprimand is an adverse employment action only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse." *Elnashar v. Speedway SuperAmerica*, LLC, 484 F.3d 1046, 1058 (8th Cir. 2007). Edwards tries to make the link: he says the reprimand memo in his file undermined his transfer application. But Edwards did not apply for that transfer until after this lawsuit had been filed. And the scope of Edwards's Title VII claim in this case is "no broader than the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed in the EEOC complaint." *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661, 674 (8th Cir. 2006) (internal quotation omitted). The transfer application events were the subject of a separate EEOC charge. Edwards received a separate right-to-sue notice on his second charge a few weeks ago. And he has not moved to amend his complaint to embrace his second charge.
>
> These post-suit events are not properly before this Court and cannot support Edwards's retaliation claim in this case. When Edwards filed his

first EEOC charge and when he brought this lawsuit, the reprimand was a piece of paper in his personnel file. It had not affected the terms or conditions of his employment. The reprimand was not then an adverse employment action. *Elnashar*, 484 F.3d at 1058. The Department is therefore entitled to judgment as a matter of law on Edwards's retaliation claim in this case. This disposition, however, is without prejudice to another lawsuit arising out of Edwards's second EEOC charge.

*Edwards I*, docket entry #22 at 5-7.  Plaintiff did not appeal Judge Marshall's Order granting summary judgment in favor of Defendant.

On May 13, 2011, Plaintiff resigned from the AHP.  Dft's Stmt. of Facts at ¶16.

On June 28, 2011, Plaintiff filed his Complaint initiating this action.  (Docket entry #1).  In his Complaint, he alleges that in July of 2010, he applied for four openings in "District 2."  (Docket entry #1 at ¶¶8-9).  According to Plaintiff, those vacancies were filled with individuals having less "law enforcement experience" than him.  (Docket entry #1 at ¶11). Plaintiff claims that Defendant "used false reasons to deny [him] a transfer in that at least a reason and part of the motivating reason was the false report by Sergeant Darren Smith that the Plaintiff had a weapon on him during training contrary to the rules, when, in fact, the Plaintiff did not have a weapon on him during the actual hand-to-hand training as alleged by Sergeant Darren Smith."  (Docket entry #1 at ¶18).  Plaintiff further alleges that Sgt. Smith "placed the false allegation of misconduct" in his personnel file: (1) because he "had made a complaint

of racial discrimination about another black Highway Policeman who was a friend of Sergeant Darren Smith;" and (2) to punish Plaintiff for filing the *Edwards I* lawsuit against Defendant.  (Docket entry #1 at ¶¶15-16).

By way of relief, Plaintiff requests: (1) compensatory damages for mental anguish and "the expense of travel on his days off to see his son;" (2) the removal of "any negative information from the Plaintiff's personnel file . . . that was placed in it because of the retaliation;" and (3) that Defendant be ordered to "stop all retaliation against him by African American supervisors."  (Docket entry #1 at ¶¶ 20-21).

On February 14, 2012, Defendant filed the pending Motion for Summary Judgment (docket entry #12) and a Brief in Support (docket entry #13).[18]   For unexplained reasons, it did not file its Statement of Material Facts (docket entry #14) until March 1, 2012.

To date, Plaintiff has failed to file *any responsive pleadings* to Defendant's summary judgment papers, and the time for doing so has long expired.[19]

---

[18]The deadline to file dispositive motions was February 15, 2012.  (Docket entry #11).

[19]Plaintiff's Response to Defendant's Motion for Summary Judgment and Statement of Disputed Material Facts was due within fourteen days from March 1, 2012, the date Defendant filed its Statement of Undisputed Material Facts.  That meant Plaintiff's motion papers were due on or before March 15, 2012.

On Monday, March 19, 2012, the Court's law clerk called the office of Plaintiff's attorney and advised his secretary or paralegal that Plaintiff's Response

In its motion papers, Defendant argues that: (1) there is no evidence that

Plaintiff engaged in statutorily protected activity; and (2) there is no evidence that it

---

and Statement of Disputed Material Facts were overdue and needed to be filed immediately. He was advised that Plaintiff's counsel was out of town but would be returning to Little Rock on Wednesday, March 21. On Tuesday, March 20, the Court's law clerk again spoke with the secretary or paralegal for Plaintiff's counsel and she stated that preparing these motion papers would be at the top of the list of things Plaintiff's counsel would do on March 21.

On Monday, March 26, Plaintiff's counsel still had not filed a Response to Plaintiff's Motion for Summary Judgment and Statement of Disputed Material Facts. The Court directed the law clerk assigned to the case to call Plaintiff's counsel and advise him of the urgency of filing these motion papers. The Court's law clerk did so, but was placed on hold and finally was told by the secretary or paralegal that Plaintiff's counsel was on the phone for longer than she expected. The law clerk requested that Plaintiff's counsel call him back. This phone call was never returned.

On Tuesday, March 27, 20102, the Court's law clerk again tried to call Plaintiff's's counsel. He was unavailable, so he left a message on Plaintiff's counsel's secretary or paralegal's voice mail reminding her that Plaintiff's counsel had still not yet filed a Response to Defendant's Motion for Summary Judgment and Statement of Undisputed Material Facts, To date, the Court has heard nothing from Plaintiff's counsel.

Local Rule 56.1(c) unequivocally states the following:

All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b).

E.D. Ark. Local Rule 56.1(c).

The Court has given Plaintiff *every opportunity* to file a Response to Defendant's Motion for Summary Judgment, along with a Statement of Disputed Material Facts controverting the facts set forth in Defendant's Statement of Undisputed Material Facts. It is now clear he does not intend to avail himself of the opportunity to respond to Defendant's Motion for Summary Judgment.

Accordingly, the Court must now enforce the clear language of Local Rule 56.1(c). For purposes of resolving Defendant's Motion for Summary Judgment, all of the facts in Defendant's Statement of Undisputed Material Facts are hereby deemed to be *admitted*.

14

took an adverse employment action against him.  Thus, it argues that, as a matter of law, it is entitled to summary judgment.

For the reasons discussed below, the Court concludes that Defendant's second argument has merit.  Accordingly, its Motion for Summary Judgment will be granted.

## II.  Discussion

"Title VII prohibits employers from retaliating against employees who oppose discriminatory practices."  *Lewis v. Heartland Inns of America, L.L.C.*, 591 F.3d 1033, 1042 (8th Cir. 2010) (citing 42 U.S.C. § 2000e-3(a)).   "The burden shifting *McDonnell Douglas* analytical framework applies [to retaliation claims] beginning with the three elements of a prima facie case of retaliation, whether: (1) the plaintiff engaged in protected conduct, including opposition to an action prohibited by Title VII; (2) []he was subjected to an adverse employment action, and (3) there is a "causal nexus between the protected conduct and the adverse action."  *Id. (quoting Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120-21 (8th Cir. 2006).

Plaintiff has asserted one claim in this lawsuit — the only claim that survived summary judgment in *Edwards I* — that Defendant issued him a "false" and "retaliatory" reprimand on December 2, 2009, which was later used by Captain Anderson as the basis for his decision not to select Plaintiff to fill one of the three positions open in District Two.

As to the second prong of the *McDonnell Douglas* analysis, Defendant argues

that it is entitled to summary judgment because there is no evidence that Plaintiff

suffered an adverse employment action:

> If this Court were to somehow find that the first prong of *McDonnell Douglas* has been met, then Plaintiff is then required to show that he suffered an adverse employment action by the Defendant for engaging in statutorily protected activity.  The Court in *Edwards I* stated that, "Precedent holds that failing to transfer an employee does not constitute an adverse employment action.  *LePique v. Hove*, 217 F.3d 1012, 1013-14 (8th Cir. 2000)."  Plaintiff admits that the job which he applied for in District 2 is not a promotion but merely transferring from a weigh station to a patrol car unit which had the same pay and benefits. [See Edwards Deposition, page 15, lines 14-20, attached as Exhibit C]. Captain Anderson gave an affidavit stating the reasons for his non-selection of Plaintiff for the transfer and it is undisputed that his decision was not connected in any way to any type of retaliation. Captain Anderson based his decision to not hire Plaintiff in District 2 due to disciplinary action for tardiness by Plaintiff and other issues, none related to Defendant engaging in statutorily protected activity. Plaintiff suffered no  adverse employment action by Defendants.

(Docket entry #13 at 5).[20]

As noted by Judge Marshall in *Edwards I*, "[a] reprimand is an adverse

employment action only when the employer uses it as a basis for changing the terms

---

[20]As to the first prong of *McDonnell Douglas*, Defendant argues that Plaintiff has "made no allegation of statutorily protected activity on the facts pled in the complaint."  (Docket entry #13 at 4-5).  Defendant's argument ignores Plaintiff's allegation that he was not transferred to District Two in retaliation for him complaining about Officer Brown's allegedly "racial comment" and as "punishment" for filing the *Edwards I* lawsuit.  (Docket entry #1 at ¶¶15-16).

or conditions of the employee's job for the worse." *Edwards I*, docket entry #22 at

5 (*quoting Elnashar v. Speedway SuperAmerica*, LLC, 484 F.3d 1046, 1058 (8th Cir.

2007)).   In this case, Captain Anderson unquestionably was responsible for

recommending who should fill the three vacancies in District Two, where he was the

District Commander.

In his February 18, 2011 Affidavit, Captain Anderson unequivocally states that:

(1) he had seven vacancies in District Two in 2010 ; (2) Plaintiff applied for three of

those vacancies; (3) before making his recommendation about filling the vacancies,

he "met with Major Paul Claunch and the District Commanders who had officers

from their respective districts applying for these positions;" (4) Captain Jeff Holmes,

the District Five Commander (where Plaintiff was currently working), "brought to his

[Captain Anderson's] attention that [Plaintiff] had reported late for duty on several

different occasions resulting in Written Reprimand;" "pointed out that [Plaintiff] had

been spoken to concerning his judgment in issuing a speeding citation while on duty

at a AHP Station;" and "also said [Plaintiff] did not appear to get along well with

other officers and felt he required close supervision;" and (5) "[t]his input [from

Captain Holmes], as well as input from the other District Commanders concerning all

the officers who had applied for the various unit positions, was the basis for the

recommendations I made concerning the filling of the new and vacant unit positions

in AHP District Two."  (Docket entry #13-2).

Captain Anderson makes it clear that the December 2, 2009 reprimand incident was *not* a part of the information he received or used in making his recommendations about filling the District Two vacancies.  Thus, the December 2, 2009 reprimand was *not* used "as a basis for changing the terms or conditions of [his] job for the worse."[21]

Where the nonmoving party elects not to respond to the moving party's motion for summary judgment, "[i]t [is] not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact."  *See Satcher v. University of Arkansas at Pine Bluff*, 558 F.3d 731, 735 (8th Cir. 2009) ("Contrary to [appellant's] argument, failure to oppose a basis for summary judgment constitutes waiver of that argument"); *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching

---

[21]While Defendant submits Captain Anderson's Affidavit in support of its Motion for Summary Judgment, it does not include the contents of that Affidavit in its Statement of Undisputed Material Facts.  However, the law is clear that unless statements of fact in an Affidavit filed in support of a Motion for Summary Judgment are controverted, those statements of fact are deemed admitted.  *See, e.g.  Brandt v. Davis*, 191 F.3d 887, 891 (8th Cir. 1999) ("Because appellants did not submit even a shred of evidence to contradict Chief Casey's affidavit, we are compelled to regard the Chief's version of the incident as uncontroverted"); *Mattson v. U.S. West Communications*, 967 F.2d 259, 260 n.1 (8th Cir. 1992) ("SIC filed an affidavit asserting that the two letters were mailed on November 13 and November 27, respectively. Because Mattson did not introduce any contrary evidence, the district court deemed these facts admitted"); *see also* Fed. R. Civ. P. 56(e)(2).

for nuggets of factual disputes to gild a party's arguments").

Finally, in *Edwards I,* Judge Marshall held that Defendant's failure to transfer Plaintiff to a patrol unit in Newport following his complaint about Officer Blair was not an "adverse employment action" under the second prong of *McDonnell Douglas*. Plaintiff did *not* appeal that ruling.  The Court fails to see how allegedly using the December 2, 2009 reprimand to deny Plaintiff a transfer (which Judge Marshall has already held was *not* an adverse employment action) could still be actionable as a "basis for changing the terms or conditions of [his] job for the worse."

## III.  Conclusion

IT IS THEREFORE ORDERED THAT Defendant's Motion for Summary Judgment (docket entry #12) is GRANTED.

Dated this 3rd day of April, 2012.

_____
UNITED STATES MAGISTRATE JUDGE